**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| TONI IVANOV, Individually and on Behalf of a Class, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **CASE NO:  08 CV 2151** |
| | ) | |
| PRODUCE WORLD, LTD. and DOES 1-10, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S JOINT MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE**

NOW COMES Defendant PRODUCE WORLD, INC. ("Produce World"), by and through its counsel, Clausen Miller P.C., and pursuant to Federal Rule of Civil Procedure 12(g)(1) ("Rule 12"), files this joint motion for dismissal of the Complaint pursuant to Rule 12(b)(6) and Motion to Strike pursuant to Rule 12(f)(2).  In support of this Motion, Defendant states as follows:

**INTRODUCTION**

Produce World is a small green grocer and deli consisting of stories in Morton Grove, Illinois and Niles, Illinois.  Plaintiff's Toni Ivanov's ("Plaintiff") Complaint alleges that Produce World violated the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681c(g) ("FACTA"), by providing her with a computer-generated receipt which displayed Plaintiff's own card expiration date.  Plaintiff also claims that this alleged violation was "willful."  H.R. 4008 is a bill recently passed by Congress that directly impacts the propriety of the allegations in this case.  H.R. 4008 would clarify that any merchant that complied with the truncation requirement for credit card numbers on receipts, but left the expiration date on the receipt, did not commit a "willful" violation of FACTA.  This bill was presented to the President of the United States on

1

May 23, 2008. If this bill becomes law, Defendant moves for dismissal of the case on this basis alone.

In addition, applying the pleading standards articulated by the United States Supreme Court in *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (May 21, 2007), Plaintiff's Complaint should be dismissed in its entirety. Specifically, the Complaint fails to adequately plead sufficient facts to plausibly show that Produce World "willfully" violated FACTA, which is fatal to her claim. Accordingly, Produce World respectfully requests that Plaintiff's Complaint be dismissed. Alternatively, Produce World moves to strike the Complaint in its entirety pursuant to Rule 12(f)(2) because the Complaint contains allegations that are immaterial and prejudicial to Produce World.

## ARGUMENT

### A.    The Wave of FACTA Class Action Litigation Has Not Gone Unnoticed By Congress

Plaintiff's lawsuit is among many identical class actions filed across the country that seek to take advantage of a recent amendment to the Fair Credit and Reporting Act ("FCRA"). *See* 15 U.S.C. § 1681c(g). FACTA was designed to reduce the risk of consumer fraud and identity theft created by improper use or disposal of consumer credit information. As of December 4, 2006, FACTA requires that no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of a card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction. Plaintiff and her purported class seek to recover statutory and punitive damages from Produce World for technical violations of FACTA. Plaintiff's law firm alone has filed at least eight other FACTA cases on behalf of this Plaintiff in the Northern District of Illinois.

Plaintiff's Complaint, which she filed on April 15, 2008, alleges that Plaintiff received from Produce World a computer-generated receipt which displayed Plaintiff's own card

1186129.1

expiration date. (*See* Complaint - Class Action at ¶18, attached hereto as Exhibit A). Plaintiff also claims that this alleged violation was "willful". (*See* Exh. A at ¶ 10). On October 30, 2007, a bill was introduced to the House of Representatives that would make technical corrections to the definition of a "willful" noncompliance with FACTA. (*See* H.R. 4008, http://thomas.loc.gov, attached hereto as Exhibit B). H.R. 4008 would clarify that any merchant that complied with the truncation requirement for credit card numbers on receipts, but left the expiration date on the receipt, did not "willfully" violate FACTA. H.R. 4008 passed in the House of Representatives on May 13, 2008, and passed in the Senate on May 20, 2008. (*See* http://www.govtrack.us, attached hereto as Exhibit C). H.R. 4008 was presented to the President of the United States for his consideration on May 23, 2008. *Id.*

Notably, Plaintiff's Complaint only contains allegations of a "willful" violation, perhaps because willful failure to comply with FACTA subjects the violator to substantial penalties and civil exposure, including statutory damages of $100 (minimum) to $1,000 (maximum) for each violation, plus punitive damages, costs of the action and attorneys' fees. In contrast, negligent violations of the law subjects the violator to actual damages and to costs of the action and attorneys' fees. FCRA does not cap the aggregate of statutory damages that can be awarded in a consumer class action.

Plaintiff does not allege, nor can she allege, that she or her purported class suffered any actual harm. Plaintiff does not allege that she was the victim of identity theft as a result of the receipt containing her own expiration date. Without actual harm, no damages are available for negligent violations under FCRA. Plaintiff can recover statutory and punitive damages <u>only</u> by pleading and establishing "willful" violations of § 1681c(g). Plaintiff's Complaint also includes sweeping, conclusory allegations of willful violations and seeks, on behalf of the Plaintiff and

the purported class, potentially millions of dollars in statutory damages. H.R. 4008 seeks to amend the Fair Credit Reporting Act to prevent these types of abusive lawsuits. (Exh. B, Sec. 2.(b)).

As written, H.R. 4008 will apply retroactively to the allegations in this case. (*See* Exhibit B at Sec. 3. (b)). Here, the only alleged FACTA violation consisted of printing the expiration date on the receipt. Plaintiff does not allege that there was any FACTA violation with regard to the card number. Therefore, the enactment of H.R. 4008 would directly impact the allegations against Produce World. As a result, Produce World requests dismissal of this case on this basis alone if H.R. 4008 is signed by the President.[1]

**B.**    **Under *Bell Atlantic*, Plaintiff Must Plead Sufficient Facts To State a Plausible Claim**

Even if H.R. 4008 does not become law, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6) because she has failed to state claim for a willful violation of Section 1681(c)(g). FED. R. CIV. P. 12(b)(6). Rule 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In 1957, the Supreme Court interpreted this language to mean that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

However, on May 21, 2007, the Supreme Court determined that *Conley's* "no set of facts" language "has earned its retirement." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (May 21, 2007). Noting the plaintiff's "obligation to provide the 'grounds' of his

---

[1] There is no indication that this bill will not become law. Because H.R. 4008 directly affects the allegations in this lawsuit, Produce World respectfully requests a stay of this matter until the President has had the opportunity to consider this bill.

1186129.1

'entitle[ment] to relief,'" the Supreme Court held that a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 S. Ct. at 1964-65, 1974. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. The Court need not accept "mere unsupported conclusions of fact or mixed fact and law" as supporting or establishing Plaintiff's claim. *Nelson v. Monroe Reg. Med. Ctr.*, 925 F.2d 1555, 1558 (7th Cir. 1991) ("In giving the pleadings a liberal construction, however, we are not required to accept legal conclusions either alleged or inferred from the pleaded facts.")

**C.     Plaintiff Failed To Plead Sufficient Facts Under the New *Bell Atlantic* Standard To Show A Willful Violation of Section 1681c(g)**

Plaintiff's Complaint is riddled with nothing but conclusory allegations that Produce World willfully violated Section 1681c(g). The FCRA provides separate statutory private rights of action for both "willful" violations of Section 1681c(g) (statutory and punitive damages under Section 1681n) and negligent violations (actual damages under Section 1681o). Noticeably absent from Plaintiff's Complaint are any allegations or requests for actual damages. Plaintiff has pled only bare, conclusory allegations of "willful" violations of Section 1681c(g), which is insufficient to survive a motion to dismiss under the pleading standard articulated by the Supreme Court in *Bell Atlantic*.

**1.     The Supreme Court Defined A "Willful" Violation of FCRA As A Knowing Or Reckless Disregard of the Law**

On June 4, 2007, the Supreme Court held that the term "willful," as used in FCRA, means a knowing or reckless disregard of the law. *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2208-2210, 167 L. Ed. 2d 1045 (June 4, 2007). In *Safeco*, the Supreme Court described "recklessness" using an objective standard as "action entailing 'an unjustifiable high risk of harm that is either known or so obvious that it should be known.'" *Safeco*, 127 S. Ct. at 2215, quoting

5

*Farmer v. Brennan*, 511 U.S. 825, 836 (1994). "It is this high risk of harm, objectively assessed, that is the essence of recklessness of common law." *Safeco*, 127 S. Ct. at 2215. The *Safeco* Court concluded: "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*.

In *Safeco*, defendant Safeco knew about its legal obligations under FCRA, but interpreted the requirement in such a way that its actions did not violate the statute. *Id.* at 2215-2216. The Supreme Court held that defendant Safeco's reading of the statute was merely careless; thus, its violations of the statute were not reckless and did not fall under the willful violation penalties found in Section 1681n. Here, Plaintiff has no factual basis to suggest that Produce World had any knowledge of FACTA's requirements. Nor has Plaintiff established that Produce World ran a high risk of violating FACTA by acting in a manner that was substantially more that "merely careless."[2] A violation of FACTA cannot be "willful" simply because a defendant knew or should have known of the application of the act. *See TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985) ("We are unpersuaded by Respondent's argument that a violation of the Act is 'willful' if the employer simply knew of the potential applicability of the ADEA"). Plaintiff has not sufficiently pled that Produce World acted with knowing or reckless disregard of its obligations under 1681c(g).

---

[2] Assuming, solely for purposes of this Motion, that Produce World was aware of the requirements in Section 1681c(g) (which it was not).

**2.     Plaintiff Failed to Plead Sufficiently That Produce World Knowingly or Recklessly Disregarded the Law**

Two Supreme Court decisions mandate dismissal of Plaintiff's Complaint. *Bell Atlantic* held that a complaint is subject to dismissal if it does not allege actual facts "plausibly" supporting (as distinguished from "possibly" supporting) the alleged violation. *Safeco* held that "willful" violations must, at a minimum, constitute "reckless disregard of the specific legal obligation violated." Thus, taken together, Plaintiff must plead facts plausibly showing that Produce World was aware of § 1681c(g)'s purported expiration date truncation requirement and acted with reckless disregard in violating that requirement. Plaintiff's Complaint falls far short.

Plaintiff's conclusory allegations of a willful violation are insufficient to meet the Supreme Court's pleadings requirements. Plaintiff's Complaint is nothing more than an effort to engage in a massive fishing expedition in the hope of unearthing some fact to support her conclusory willfulness claim. However, *Bell Atlantic* does not allow Plaintiff to put the cart before the horse. In order to proceed with her claim, Plaintiff must first plead plausible facts suggesting Produce World's willful violation of § 1681c(g). The stakes are much too high in this case to allow Plaintiff to proceed based upon conclusory allegations of willful violations.

In *Bell Atlantic*, the Supreme Court set forth a heightened standard under which pleadings are scrutinized: Plaintiff is required to plead sufficient *factual* allegations "to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1965. Under *Bell Atlantic*, Plaintiff may no longer rely upon "labels and conclusions," like Plaintiff does in this case. Instead, Plaintiff must plead facts to establish that a claim is *plausible*, not merely *possible*. *Id.* In this case, Plaintiff has failed to satisfy *Bell Atlantic's* standard.

In her Complaint, Plaintiff's factual allegations are: (1) "[o]n Feb. 10, 2008,...plaintiff received from Produce World...a computer-generated cash register receipt which displayed

7

plaintiff's card expiration date"; (2) Defendant accepts VISA cards…; (3) the requirements of Section 1681c(g) were widely publicized among retailers; and (4) most of Produce World's "business peers and competitors…programm[ed] their card machines to prevent them from printing more than the last five digits of the card number and/or expiration date upon the receipts provided to the cardholders[.]" (Exh. A, ¶¶ 18, 35, 40, 75).

Plaintiff's allegations in paragraphs 18, 35, 40, 75 of her Complaint are insufficient to elevate her claim from "mere possibility" to "plausible claim" that Produce World willfully printed her card expiration date on her receipt. Plaintiff cannot impute knowledge and understanding of the requirements of Section 1681c(g) to Produce World solely because the requirements of Section 1681c(g) were allegedly published to certain unidentified "retailers." Under Plaintiff's rationale, every single business that accepts credit cards would be deemed to know the requirements of Section 1681c(g). *See, e.g., Kodrick v. Ferguson*, 54 F. Supp. 2d 788, 790-98 (N.D. Ill. 1999) (holding knowledge of an employee insufficient to attribute knowledge to company under FCRA). Plaintiff's remaining allegations simply state that Produce World printed Plaintiff's card expiration date on her receipt, and that most of Produce World's "business peers and competitors," again an undefined group, programmed their card machines to prevent them from printing no more than the last five numbers of the card number and/or the expiration date. (Exh. A, ¶¶ 18, 75). Such allegations do not rise to the level of willfulness.

Plaintiff's Complaint contains several paragraphs regarding identity theft and why Congress enacted this amendment. While educational, these allegations are of no moment. Noticeably absent from Plaintiff's Complaint are any allegations that Plaintiff's identity was stolen. Plaintiff also added allegations regarding measures that VISA has taken to prevent identity theft. However, Plaintiff fails to allege that Produce World was aware of the

announcements quoted in these allegations.  Simply because Produce World accepted VISA cards does not impute knowledge of FACTA's requirements to Produce World.

Plaintiff's Complaint is also riddled with irrelevant allegations listing a number of entities that published materials regarding FACTA's requirements, such as the National Association of Convenience Stores, the Ohio Independent Automobile Dealers' Association, the Independent Insurance Agents and Brokers of America, the American Physical Therapy Association, and several retailers in Virginia, Pennsylvania, Connecticut, Wisconsin, Massachusetts, and Ohio. (*See* Exh. A at ¶¶ 49-59).  Of course, there is nothing from any association for small green grocers.  Certainly, none of these allegations are relevant to show that Produce World had any knowledge of FACTA's requirements and recklessly disregarded those requirements.  These allegations should be stricken.

Plaintiff does not allege facts to show that Produce World had actual notice of the requirements.  Plaintiff does not allege sufficient facts to show that Produce World received, read or understood such notice.  Plaintiff does not allege sufficient facts to show that Produce World was more than "merely careless."  Plaintiff's factual allegations do not move her claim from the realm of possibility to the requisite *Bell Atlantic* threshold of plausibility.  As a result, Plaintiff's Complaint should be dismissed.

**3.      Plaintiff Failed to Plead Sufficient Factual Allegations to Show a Willful Violation of Section 1681c(g) or That Plaintiff Sustained Any Injury or Damage**

The only conclusion from the allegations in Plaintiff's Complaint is that any alleged violations were innocent, technical violations.  Plaintiff failed to plead and cannot plead that: (1) Produce World knew a high risk of harm existed from printing an expiration date on a credit card receipt; or (2) that a high risk of harm from printing an expiration date on a card receipt is so obvious that Produce World should have known of such risk.

9

Other federal courts have recognized that it is virtually impossible for the inclusion of the expiration date on a credit card or debit card receipt to result in identity theft or any other actual harm. *See Soualian v. International Coffee and Tea LLC*, No. CV 07-502-RGK, 2007 U.S. Dist. LEXIS, at *8, fn.5 (C.D. Cal. June 11, 2007) ("it appears virtually impossible for the inclusion of an expiration date on a credit card or debit card to result in identity theft or any other actual harm."); *Spikings v. Cost Plus, Inc.*, No. CV 06-8125-JFW, 2007 U.S. Dist. LEXIS 44214, at *13 (C.D. Cal. May 25, 2007) ("it appears unlikely, if not impossible, for the inclusion of the expiration date on a credit card or debit card to result in identity theft or any other actual harm.").

In addition to a knowing or reckless violation of the FCRA, Plaintiff must allege some injury or damage that she suffered in order to recover for even a willful violation under § 1681n. *Ruffin-Thompkins v. Experian Info. Solutions, Inc.,* 422 F.3d 603, 610 (7th Cir. 2005). Plaintiff alleges no such injury or damage. In *Ruffin-Thompkins,* plaintiff alleged that defendant "willfully and negligently" violated § 1681i of the FCRA by failing to conduct a reasonable reinvestigation of the plaintiff's dispute concerning information contained in her credit file and failing to delete inaccurate information after investigation. *Id.* at 607. The plaintiff sought actual damages, costs and fees under § 1681n and § 1681o; and she sought, in addition, statutory and punitive damages under § 1681n. *Id.* at 607, 610. The Seventh Circuit did not even reach the issue of whether the defendant conducted a reasonable reinvestigation in violation of § 1681i, because the plaintiff did not show that she suffered any damages. *Id.* at 608. The Court noted that, "the FCRA does not presume damages; instead, . . . the consumer must affirmatively prove that she is entitled to damages." *Id.* at 610. Thus, even though the Court acknowledged a "systemic problem" with the defendant's reinvestigation procedures, it ruled, "we need not determine whether this potential problem with Experian's reinvestigation procedures led to a

10

violation of the duty imposed by the FCRA, because Ruffin-Thompkins' **inability to show damages dooms her claim.**" *Id.* at 610-611 (emphasis added).

Here, Plaintiff has failed to properly allege a willful violation and has provided no allegation, not even a conclusory allegation, of any injury or damage resulting from Produce World's alleged conduct. Plaintiff could not make such an allegation because she and her attorneys allegedly have the only receipt provided by Produce World, and that receipt could not have been accessed by any other person. Accordingly, her claim cannot survive.

**D.     Produce World Could Not Willfully Violate a Vague and Ambiguous Statute**

Plaintiff's Complaint should also be dismissed because Section 1681c(g) is vague and ambiguous. By passing H.R. 4008, Congress clearly recognized the ambiguity and unintended consequence in the statutory language. Produce World's alleged conduct could not have willfully violated Section 1681c(g), because the obligations under the statute are uncertain.

Section 1681c(g) contains a clear grammatical error that makes the language of the statute vague and ambiguous. As Congress recognized, it is difficult to decipher the plain meaning of the statute. While courts are generally required to construe statutes according to their plain meaning to avoid ambiguities, the meaning is not clear where it would render an absurd result which the legislature would not intend. *See, e.g., United States v. Am. Trucking Ass'n*, 310 U.S. 534, 543-44 (1940) (noting that when the plain meaning of a statute has led to absurd results the court has looked beyond the words to the purpose of the act). Produce World could not have willfully violated Section 1681c(g) as a matter of law because the statute is ambiguous (as recognized by Congress in H.R. 4008) and easily readable as permitting the acts alleged (i.e., printing expiration dates but truncating card number). Moreover, reading the statute to impose liability on Produce World would lead to the absurd result of Produce World being liable for millions of dollars in statutory and punitive damages, despite the fact that Plaintiff has not

11

alleged or suffered any harm.  There is no indication that Congress intended such a devastating result.  In fact, Congress is aware of the abusive nature of these lawsuits.  (Exh. B, Sec. 3. (b)).

**E.**      **The Relief Plaintiff Seeks Violates Due Process and Principles of Tort Law**

Plaintiff seeks to recover potentially millions of dollars in statutory damages in the conspicuous absence of <u>any</u> allegation of actual harm.  The recovery of statutory damages without actual harm is contrary to recognized legal principles of due process and tort law as most recently articulated by the Supreme Court in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 412 (2003).  In *State Farm*, the Supreme Court examined procedural and substantive constitutional limitations on damage awards in the context of a $145 million punitive damage award in a case where the plaintiff was awarded $1 million in compensatory damages - a 145 to 1 ratio.  "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."  *Id.* at 416.  "The reason is that 'elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.'"  *Id.* at 417, *quoting BMW of N. Am. v. Gore*, 517 U.S. 559, 574 (1996).

Courts have similarly recognized the problem associated with plaintiffs seeking enormous statutory damage awards on behalf of a class where the awards are completely unrelated to the amount of harm inflicted.  *See, e.g., See Parker v. Time-Warner Entertainment Co.*, 331 F.3d 13, 26 (2d Cir. 2003) (noting that where statutory damages in a class action would amount to $12 billion dollars, such an award "might well encounter due process objections"); *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412, 414, 416 (S.D.N.Y. 1972) (declining to certify class of 130,000 that sought a minimum of $13 million in statutory damages where no actual harm was alleged).  Here, Plaintiff seeks "statutory damages, attorneys' fees and

12

costs…including punitive damages." (Exh. A, ¶ 11). There is not even a hint of **any** actual damages to Plaintiff or the putative class. Allowing recovery of statutory damages in amounts between $100 to $1000 per violation, for what may be technical violations of FACTA, would be grossly excessive. Multiply those ratios by the members of the putative class who visited a green grocery store operated by Produce World, and the statutory damages potentially explode to millions of dollars. Such statutory damages shock the conscious, particularly in the absence of **any** actual harm. As a result, Plaintiff's Complaint should be dismissed.

## MOTION TO STRIKE

Alternatively, Produce World seeks to strike Plaintiff's Complaint in its entirety pursuant to Rule 12(f)(2). A Rule 12(f) motion asks the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f) (2008). A motion to strike may sometimes be "a useful means of removing 'unnecessary clutter' from a case, which will in effect expedite the proceedings." *Reis Robotics USA, Inc. v. Concept Indus., Inc.,* 462 F. Supp. 2d 897, 904 (N.D. Ill. 2006).

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading which sets forth a claim for relief shall contain: (1) a short and plain statement of the grounds upon which the court's jurisdiction depends; (2) a short and plain statement of the claim showing that a pleader is entitled to relief; (3) a demand for judgment for the relief the pleader seeks. FED. R. CIV. P. 8(a) (2008). Plaintiff's Complaint violates the general rules of pleading as expressed in Rule 8(a). It is improper for Plaintiff to include allegations in the Complaint about what may be in newspaper articles (*See* Exh. A, ¶ 5), statements submitted to the House Committee on Financial Services (*See* Exh. A, ¶ 43), publications of the Office of Thrift Supervision of the Treasury Department that apply to federal savings banks (*See* Exh. A, ¶ 44), or, as another example, statements reported in the February/March 2005 Virginia Retail Merchant's Association Newsletter (*See*

13

Exh. A, ¶ 5).  These allegations are immaterial and prejudicial to Produce World because they have no connection to this case.

In violation of Federal Rule of Civil Procedure Rule 12(f), Plaintiff's allegations are redundant, immaterial or impertinent.  For example, in Paragraph 4 of the Complaint, the plaintiff draws her own conclusions as to the purpose of the "truncation requirement" of the subject statute and makes a thinly-veiled attempt to add credibility to her perceptions by setting forth purported statistics from the Federal Trade Commission.  The allegations of Paragraph 4 are immaterial because no evidence to support them would be admissible at trial.  *Lennon v. Seaman*, 63 F. Supp. 2d 428, 446-47 (S.D.N.Y. 1999).

In Paragraph 5 (and several others), Plaintiff makes reference to a newspaper article but fails to attach a copy of the newspaper article for reference or other purposes.  This imposes an undue burden on Produce World to answer such allegations.  *See, e.g., Revere Camera Co. v. Eastman Kodak Co.*, 81 F. Supp. 325, 333 (D.C. Ill. 1948) (motion to strike granted when allegations in complaint would impose an undue burden on defendant to answer).  The allegations of Paragraph 5 are both immaterial and impertinent pursuant to Rule 12 in the sense that the instant Plaintiff is not likely to be permitted to offer a random newspaper article into evidence at trial.

Similarly, Paragraphs 7, 8, and 9 of the Complaint are not simple averments or allegations of fact, but, instead, consist of Plaintiff's own interpretations of FACTA.  In addition, Paragraphs 34 – 73 are not facts alleging a violation of FACTA.  Plaintiff does not attach copies of any of these reports to the Complaint.  Produce World should not be required to research whether, for example, "after the enactment of FACTA, the Wisconsin Restaurant Association issued a "Credit Card Transaction Alert to its members …" in order to answer the Complaint.

14

(*See* Exh. A, ¶ 53).  Produce World is a grocery store operating in Illinois.  Materials from the National Association of Convenience Stores, the Ohio Independent Automobile Dealers' Association, the Independent Insurance Agents and Brokers of America, the American Physical Therapy Association, and several retailers in Virginia, Pennsylvania, Connecticut, Wisconsin, Massachusetts, and Ohio (Exh. A at ¶¶ 49-59) are immaterial to the allegations in this case and prejudicial to Produce World.  Plaintiff attempts to confer knowledge of FACTA to Produce World by citing to these sources, but Plaintiff fails to connect the dots and allege any specific connection to Produce World.

Therefore, Produce World asks this Court to strike Plaintiff's Complaint in its entirety because the Complaint contains more redundant, immaterial or impertinent allegations than a short and plain statement of the claim showing that the pleader is entitled to relief.   In the alternative, Produce World asks the Court to strike Paragraphs 3, 4, 5, 6, 7, 8, and 34 through 75.

## CONCLUSION

For the foregoing reasons, Defendant, Produce World Restaurant, Inc., d/b/a Wendy's and Does 1-10, requests that this Court grant its motion to dismiss and dismiss the Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and/or grant its motion to strike the Complaint in its entirety pursuant to Rule 12(f)(2).

Respectfully submitted,

/s/ Maria Z. Vathis

STEVEN N. NOVOSAD
MARIA Z. VATHIS
CLAUSEN MILLER P.C.
10 S. LaSalle Street
Chicago, Illinois  60603
312/855-1010
Attorneys for Defendant PRODUCE WORLD, LTD., and DOES 1-10

1186129.1

## <u>CERTIFICATE OF SERVICE</u>

On June 2, 2008, I electronically filed the foregoing with the Clerk of the Court using the

ECF    system,    which    will    send    notification    of    such    filing    to    the    following:


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Thomas Everett Soule
EDELMAN, COMBS, LATTURNER
& GOODWIN
120 South LaSalle Street, 18th Floor
Chicago, IL 60603
(312) 739-4200
courtecl@edcombs.com
clm@rnplaw.com
ccombs@edcombs.com
jlatturner@edcombs.com
tsoule@edcombs.com


By:    /s/ Maria Z. Vathis
       Maria Z. Vathis
       Clausen Miller P.C.
       10 S. LaSalle Street
       Chicago, IL 60603-1098
       Telephone: 312/855-1010
       Facsimile: 312/606-7777
       mvathis@clausen.com

1186129.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TONI IVANOV,
individually and on behalf of a class,       )
                                              )
              Plaintiff,                      )
                                              )
       v.                                     )
                                              )
PRODUCE WORLD, LTD.,                          )
and DOES 1-10,                                )
                                              )
              Defendants.                     )

FILED: APRIL 15, 2008
08CV2151           LI
JUDGE   CASTILLO
MAGISTRATE JUDGE NOLAN

## COMPLAINT -- CLASS ACTION

### INTRODUCTION

1.      Plaintiff Toni Ivanov brings this action to secure redress for the violation by Produce World, Ltd. of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2.      One provision of FACTA, codified as 15 U.S.C. §1681c(g), provides that:

**No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

3.      Section 1681c(g) is "not ambiguous." It "expressly prohibits printing more than the last five digits of the credit/debit card numbers and also prohibits printing the card's expiration date." Pirian v. In-N-Out Burgers, 06-1251, 2007 U.S. Dist. LEXIS 25384, *8 (C.D.Cal. Apr. 5, 2007); accord, Iosello v. Leiblys, Inc., 502 F.Supp.2d 782 (N.D.Ill. 2007); Follman v. Hospitality Plus of Carpentersville, Inc., 07 C 2934, 2007 U.S. Dist. LEXIS 77440 (N.D.Ill., Oct. 17, 2007); Follman v. Village Squire, Inc., 07 C 3767, 2007 U.S. Dist. LEXIS 92585 (N.D.Ill., Dec.

1



EXHIBIT

A

18, 2007); Korman v. Walking Co., 503 F. Supp. 2d 755 (E.D.Pa. 2007); Ramirez v. MGM Mirage, Inc., 2:07-CV-00326-PMP-PAL, 2007 U.S. Dist. LEXIS 95254 (D.Nev. December 3, 2007).

4.    The purpose of this "truncation requirement" is to prevent identity theft. The Federal Trade Commission estimates that over 9 million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.

5.    One common modus operandi of identity thieves is to obtain credit card receipts that are lost or discarded, or through theft, and use the information on them to engage in transactions. Identity thieves who do this are known as "carders" and "dumpster divers." This modus operandi is more common than the use of sophisticated electronic means to obtain the information. Robin Sidel, "Identity Theft – Unplugged – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1.

6.    The expiration date is generally necessary for misuse of the card number.

7.    Merchants generally will not honor a credit card in a card-not-present transaction (telephone or Internet or fax) without both the correct expiration date and the card number. Thieves prefer to engage in such transactions to commit credit card fraud, so as to reduce the chances of apprehension.

8.    To curb this means of identity theft, Congress prohibited merchants who accept credit cards and debit cards from issuing electronically-generated receipts that display either the expiration date or more than the last five digits of the card number.

9.    The law gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.

2

10.  Defendant has willfully violated this law and failed to protect plaintiff and others similarly situated against identity theft and credit card and debit card fraud by failing to comply with the truncation requirement.

11.  Plaintiff brings this action against defendant based on defendant's violation of 15 U.S.C. §§1681 *et seq.* Plaintiff seeks statutory damages, attorneys fees, costs, and such other relief as the Court deems proper, including punitive damages.

## JURISDICTION AND VENUE

12.  This Court has subject matter jurisdiction under 28 U.S.C. §1331 and 15 U.S.C. §1681p (FCRA).

13.  Venue in this district is proper because defendant Produce World, Ltd. does business here.

## PARTIES

14.  Plaintiff, Toni Ivanov, is a resident of this district.

15.  Defendant Produce World, Ltd. is an Illinois corporation that maintains a food store at 8325 W. Lawrence Ave., Norridge, IL 60706-3129. Its registered agent and office are William S. Bazianos, 750 Lake Cook Road, Suite 350, Buffalo Grove, IL 60089.

16.  Defendant Produce World, Ltd. is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

17.  Defendants Does 1-10 are individual officers, directors, employees and agents of defendant Produce World, Ltd. who authorized, directed or participated in the violations of law complained of.

3

## FACTS

18.    On Feb. 10, 2008, plaintiff received from Produce World, Ltd. at its establishment located at 8325 W. Lawrence Ave., Norridge, IL 60706-2129, a computer-generated cash register receipt which displayed plaintiff's card expiration date.

## CLASS ALLEGATIONS

19.    Plaintiff brings this action on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

20.    The class is defined as all persons to whom Produce World, Ltd. provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays (a) more than the last five digits of the person's credit card or debit card number, or (b) the expiration date of the person's credit or debit card or (c) both.

21.    The class is so numerous that joinder of all individual members in one action would be impracticable.

22.    There are over 100 persons to whom Produce World, Ltd. provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays (a) more than the last five digits of the person's credit card or debit card number, or (b) the expiration date of the person's credit or debit card or (c) both.

23.    Plaintiff's claims are typical of the claims of the class members. All are based on the same legal theories and arise from the same unlawful and willful conduct.

24.    There are common questions of fact and law affecting members of the class,

4

which common questions predominate over questions which may affect individual members. These include the following:

a. Whether defendant had a practice of providing customers with a sales or transaction receipt which failed to comply with the truncation requirement;

b. Whether defendant thereby violated FACTA;

c. Whether defendant's conduct was willful; and

d. Identification and involvement of the Doe defendants.

25. Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that conflict with the interests of the class members. Plaintiff has retained experienced counsel.

26. A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members. Individual actions are not economically feasible.

## VIOLATION ALLEGED

27. Defendants violated 15 U.S.C. §1681c(g)(1), which provides that:

**. . . no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

28. With respect to machines that were first put into use after January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

29. With respect to machines that were in use before January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after

December 4, 2006.

30.     Produce World, Ltd. accepts credit cards and/or debit cards in the course of transacting business with persons such as plaintiff and the class members. In transacting such business, defendant uses cash registers and/or other machines or devices that electronically print receipts for credit card and/or debit card transactions.

31.     After the effective date of the statute, defendant, at the point of sale or transaction, provided plaintiff and each class member with one or more electronically printed receipts on each of which defendant failed to comply with the truncation requirement.

32.     FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.

33.     Defendant knew or should have known of the truncation requirement.

34.     VISA, MasterCard, the PCI Security Standards Council – a consortium founded by VISA, MasterCard, Discover, American Express and JCB – companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed merchants about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and the need to comply with the same.

35.     The requirement was widely publicized among retailers.

36.     For example, in response to earlier state legislation enacting similar truncation requirements, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that "Today, I am proud to announce an additional measure to combat identity theft and protect

6

consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . . ." "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," PR Newswire, March 6, 2003.

37.    Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

38.    The card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

39.    For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." These statements were accompanied by a picture of a receipt showing precisely what had to be removed. VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

40.    Defendant accepts Visa cards and is a party to a contract requiring compliance with the above-quoted requirement.

41.    American Express has a manual that contains a similar depiction of what information must be suppressed.

42.    These requirements were widely publicized. The following are illustrative.

43.    On July 9, 2003, L. Richard Fischer of VISA USA presented a written

7

statement to the House Committee on Financial Services supporting the truncation requirements

of what ultimately became FACTA. Mr. Fischer stated:

> Although Visa generally believes that the details of preventing identity theft should be left to financial institutions that are best suited to address ever evolving fraud techniques, Title II could provide important benefits to consumers and financial institutions alike by establishing workable identity theft provisions and ensuring that these provisions benefit from national uniformity. For example, Section 203 of Title II would prohibit any merchant or other entity that accepts credit and debit cards from printing more than the last four digits of the card account number *or the expiration date* upon receipts provided to cardholders at the point of sale

44.    The Office of Thrift Supervision of the Treasury Department ("OTS"), is

responsible, *inter alia*, for compliance with FACTA by federal savings banks. Toward this end, the

OTS publishes an Examination Handbook for OTS field personnel to use when they perform an

examination, or compliance audit, of a given financial institution. The February 2006 edition of the

Handbook states:

> ### Truncation of Credit and Debit Card Account Numbers
>
> Ensure that electronically generated receipts from ATM and POS terminals or other machines do not contain more than the last five digits of the card number and do not contain the expiration dates.

45.    Heartland Payment Systems, Inc. provides credit and debit card, payroll

and related processing services to restaurant, hotel and retail merchants throughout the United

States, and indicates on its website that it provides services to over 137,000 merchants. In 2003,

Heartland broadly disseminated a pamphlet which included the following statement:

> Your credit card terminal is now–or will soon be required by law or the bankcard associations to truncate–or limit–the information that can appear on electronically printed sales receipts.
>
> What that means is that on all cardholder numbers:
>
> o    The expiration date must be eliminated

8

o    All but the last four numbers of the card number must be obscured. . . . .

46.    In 2006, Heartland broadly disseminated a second pamphlet, which included the following statement:

**Make every transaction a safe one. * * * ***

o    The cardholder's receipt ***should not include*** the card's expiration date and ***should only include*** the last 4 or 5 digits of the card number. * * * *

47.    Another credit card processor, Commerce Bank, sent "Merchant Compliance Awareness" notices to its customers during 2004. These stated that all but the last four digits of the cardholder account number and the entire expiration date had to be suppressed from the receipt.

48.    A bulletin dated June 14, 2006 issued by AllianceData, another processor, informed its customers that under FACTA "no person that accepts credit cards or debt cards for the transaction of business shall print more that the last 5 digits of the card number **or the expiration date** upon any receipt provided to the cardholder at the point of sale transaction." It further stated that Visa required compliance by July 1, 2006 and MasterCard by April 1, 2005.

49.    Many restaurant and retail trade associations apprised their merchant members that FACTA imposed truncation requirements mirroring Visa's truncation requirements. For example, the Virginia Retail Merchants Association reported in its February/March 2005 Newsletter that "FACTA says receipts for credit and debit card transactions may not include more than the last five digits of the card number or expiration date."

50.    In the April 23, 2003 edition of the monthly magazine for the National Association of Convenience Stores, an article titled "Visa USA Targets Identity Theft," appeared which included the following statement:

[A]t a press conference held last month with Sen. Dianne Feinstein (D-CA), Visa

9

announced its account truncation security policy. This protects consumers from identity theft by limiting cardholders' information on receipts to the last four digits of their accounts. The policy will also eliminate the card's expiration date from receipts altogether. Feinstein has introduced legislation to combat identity theft.

51.    The April 2005 edition of the Food Industry Advisor, the newsletter for the Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council, included an article regarding the requirements of credit card truncation under FACTA which included the following language:

> [A]ccording to the FACTA Act, `no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.....

The same article appeared in the April 2005 Edition of the NACS Magazine, published by the National Association of Convenience Stores.

52.    In its Spring 2004 Newsletter, the Connecticut Restaurant Association Newsletter included an article regarding Requirements for Credit Card Truncation, which stated:

> [T] here is currently no Connecticut state law, so the two ruling requirements come from VISA and a new Federal Fair Credit Reporting Act signed in December 2003.
>
> Truncation requires that all but the last four digits of the cardholder account number, along with the entire expiration date, be suppressed on the cardholder copy of the transaction receipt generated from all electronic terminals....

53.    After the enactment of FACTA, the Wisconsin Restaurant Association issued a "Credit Card Transaction" Alert to its members, which stated:

> You may have been hearing about credit card truncation lately. This is what you need to know.
>
> Credit card truncation removes all but the last four (or five) digits of a credit card account number ad the expiration date from the sales receipt. For example: A non-truncated receipt would list:

10

Acct. #  1234 5678 7654 3210 Exp. 10/05

while a truncated receipt would show:

Acct. # **** **** **** 3210 Exp ****. .. .

The federal Fair and Accurate Credit Transaction Act of 2003, prohibits any person that accepts credit cards or debit cards from printing the expiration date and more than the last five digits of the card number upon any terminal-generated receipt provided to the cardholder at the point of sale....

54.     In the January 2005 edition of the Massachusetts Restaurant Association Newsletter, an article appeared apprising Association members that both Visa and MasterCard require truncation of the entire expiration date and all but the last four digits of the cardholder account number.

55.     Similar information was disseminated by the Ohio Restaurant Association, the Oklahoma Restaurant Association, and a significant number of other restaurant trade associations, and retail merchant trade associations.

56.     In the March/April 2006 Edition of the Ohio Independent Automobile Dealers' Association Dealer News Magazine, an article was published entitled "What You Should Know about Credit and Debit Card Processing and the FACTAs about Card Truncation." The article states:

What is Card Truncation? This federal law sets deadlines  by which the receipt electronically printed from a credit card sale must be truncated—meaning, the receipt given to the customer shows no more than the last five digits of the customer's credit card number and does not show the expiration date.

Business owners are responsible for merchant account compliance with the truncation regulations and must make sure their printed cardholder receipts do not contain expiration dates or full account numbers.

This same article appeared in the March/April edition of the West Coast Independent Automobile

11

Dealer News.

57.     The Independent Insurance Agents & Brokers of America circulated a report to its members dated June 5, 2005 titled: "Overview of the Fair Credit Reporting Act, The Fair and Accurate Credit Transactions Act, and the Drivers Privacy Protection Act." In relevant part, this publication stated:

> Under the FACT Act, businesses and others accepting credit or debit cards for payment may not print more than the last five digits of the card number nor may they print the expiration date upon any receipt provided to the cardholder at the point of sale.

58.     The November 18, 2004 edition of the Compliance Challenge, published by the Credit Union National Association News, stated: "FACTA prohibits anyone that accepts credit/debit cards to print more than the last 5 digits of the card number or expiration date on any receipt at the point of sale or transaction...."

59.     In the October 10, 2003, edition of the PT Bulletin, a Newsletter for the American Physical Therapy Association, an article appeared titled, "Truncation Requirement Now in Effect for Credit Card Processing." In relevant part, this article stated:

> Physical therapists who accept credit card payments from patients and clients face new processing requirements from major credit card companies. In an effort to minimize opportunities for credit card fraud, Visa and MasterCard...have mandated that credit card account numbers and expiration dates be masked on all receipts. Compliance with this requirement is not optional....

60.     On January 10, 2007, the National Retail Federation sent a memo to the general counsels of its members warning that failure to suppress both "credit card expiration dates or anything beyond the last five digits of a customer's credit card number on the copy of the receipt provided to the customer" was likely to result in a lawsuit.

61.     The Federal Trade Commission issued a business alert in May 2007 entitled

12

"Slip Showing?  Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts," which stated: "According to the federal Fair and Accurate Credit Transactions Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date."

62.    Truncation standards, including the standards reflected in the Visa Merchant Rules and in FACTA, permit the publication of the last four or five digits of customer account numbers on the receipt presented to customers at the point of sale.  The publication of this minimal amount of account information is necessary to facilitate merchant account reconciliation, processing of returns, etc.  In isolation, the publication of *only* the last four or five digits of a customer account number significantly limits the extent to which a potential identity thief can effectively use customer receipts disseminated at the point of sale to facilitate identity theft.

63.    The publication of expiration dates on customer receipts disseminated at the point of sale, *in addition to* the last four or five digits of the customer account number, exponentially increases the possibility of identity theft, which is the obvious reason that Visa, and then Congress, requires the truncation of expiration dates.

64.    Credit and debit card account numbers are not randomly generated.  Instead, account numbers reflect an internal coding scheme set forth by the International Organization for Standardization ("ISO") 7812, which defines the content in the cards' magnetic strips.  Consistent with this standard, every credit card number consists of the following: (a) a single digit Major Industry Identifier ("MII"); (b) an issuer identification number ("IIN"); (c) an number unique to the card; and (d) a check digit.

13

65.    The MII identifies the industry of the issuer of the card..

66.    The IIN consists of the first six digits of the card number and identifies the specific issuer of the card.

67.    The seventh through next to the last digit, up to a maximum of 12 digits, is the number unique to the card.

68.    The last digit is a "check digit" that is not randomly assigned, but instead is calculated by a defined algorithm. Therefore, the "check digit" is derivative of the other numbers in the credit card number.

69.    Astute identity thieves are familiar with this coding paradigm and can use sophisticated mathematical modeling to decipher account numbers.

70.    To the extent that an identity thief is able to decipher a credit card user's account number, the importance of truncating expiration dates becomes manifest. That is, unlike the account number on the credit or debit card, the expiration date cannot be deciphered through sophisticated mathematical modeling. Therefore, the expiration date is an important security check that corroborates that a person attempting to use a given account number is actually the authorized user of the card.

71.    The expiration dates are also used to confirm that a person making a purchase over the phone or on the internet actually has the card in their possession.

72.    Banks and credit card associations (i.e. Visa, MasterCard, American Express, etc.) are keenly aware of the importance of truncating expiration dates.

73.    In addition, a would be identity thief who steals a receipt containing the last four or five digits of a credit card account number *and* an expiration date can use that data in an

14

attempt to dupe the cardholder, or other potential information sources, into disclosing additional confidential financial information relating to the cardholder. The more information that is disclosed on the receipt, the easier it is to pilfer additional confidential financial information.

74.    The costs of truncating credit and/or expiration dates and account numbers is minimal.

75.    Most of defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendant could have readily done the same.

76.    Defendants willfully disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA.

77.    The FCRA, 15 U.S.C. §1681n, provides:

**§1681n. Civil liability for willful noncompliance**

**(a) In general.** Any person who willfully fails to comply with any requirement imposed under this title [15 USC §§1681 et seq.] with respect to any consumer is liable to that consumer in an amount equal to the sum of—

  **(1)**

    (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

    (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

  **(2)** such amount of punitive damages as the court may allow; and

  **(3)** in the case of any successful action to enforce any liability under this

15



section, the costs of the action together with reasonable attorney's fees as determined by the court. . . .

78.     The FCRA, 15 U.S.C. §1681p, provides:

§ 1681p. Jurisdiction of courts; limitation of actions

An action to enforce any liability created under this title [15 USCS §§ 1681 et seq.] may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of—

(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or

(2) 5 years after the date on which the violation that is the basis for such liability occurs.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class members and against defendants as follows:

a.     For statutory damages of $100 to $1,000 per violation;

b.     For attorney's fees, litigation expenses and costs;

c.     For such other and further relief as the Court may deem proper, including punitive damages.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

16

## JURY DEMAND

Plaintiff demands trial by jury.

s/Daniel A. Edelman
Daniel A. Edelman

T:\21298\Pleading\Complaint_Pleading.wpd

17



## NOTICE OF LIEN

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

18

HR 4008 RDS

110th CONGRESS

2d Session

**H. R. 4008**

**IN THE SENATE OF THE UNITED STATES**

**May 14, 2008**

Received

**AN ACT**

To amend the Fair Credit Reporting Act to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act.

> *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

## SECTION 1. SHORT TITLE.

This Act may be cited as the `Credit and Debit Card Receipt Clarification Act of 2007'.

## SEC. 2. FINDINGS; PURPOSE.

(a) Findings- The Congress finds as follows:

(1) The Fair and Accurate Credit Transactions Act (commonly referred to as `FACTA' ) was enacted into law in 2003 and 1 of the purposes of such Act is to prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud.

(2) As part of that law, the Congress enacted a requirement, through an amendment to the Fair Credit Reporting Act, that no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the card holder at the point of the sale or transaction.

EXHIBIT

B

(3) Many merchants understood that this requirement would be satisfied by truncating the account number down to the last 5 digits based in part on the language of the provision as well as the publicity in the aftermath of the passage of the law.

(4) Almost immediately after the deadline for compliance passed, hundreds of lawsuits were filed alleging that the failure to remove the expiration date was a willful violation of the Fair Credit Reporting Act even where the account number was properly truncated.

(5) None of these lawsuits contained an allegation of harm to any consumer's identity.

(6) Experts in the field agree that proper truncation of the card number, by itself as required by the amendment made by the Fair and Accurate Credit Transactions Act, regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud.

(7) Despite repeatedly being denied class certification, the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit.

(b) Purpose- The purpose of this Act is to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers.

# SEC. 3. CLARIFICATION OF WILLFUL NONCOMPLIANCE FOR ACTIONS BEFORE THE DATE OF THE ENACTMENT OF THIS ACT.

(a) In General- Section 616 of the Fair Credit Reporting Act (15 U.S.C. 1681n) is amended by adding at the end the following new subsection:

`(d) Clarification of Willful Noncompliance- For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection but otherwise complied with the requirements of section 605(g) for such receipt shall not be in willful noncompliance with section 605(g) by reason of printing such expiration date on the receipt.'.

(b) Scope of Application- The amendment made by subsection (a) shall apply to any action, other than an action which has become final, that is brought

for a violation of 605(g) of the Fair Credit Reporting Act to which such amendment applies without regard to whether such action is brought before or after the date of the enactment of this Act.

Passed the House of Representatives May 13, 2008.

Attest:

LORRAINE C. MILLER,

Clerk.

*END*

THOMAS Home | Contact | Accessibility | Legal | USA.gov

# GovTrack.us

Tracking the 110th United States Congress

Legislation > 2007-2008 (110th Congress)

# H.R. 4008: Credit and Debit Card Receipt Clarification Act of 2007

To amend the Fair Credit Reporting Act to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act.

| **Overview** | Summary | Speeches |
|---|---|---|

| | | | **Articles About This Bill** |
|---|---|---|---|
| Sponsor: | Rep. Tim Mahoney [D-FL] **cosponsors (52)** | show | No articles are associated with this bill. |
| Bill Text: | Summaries (CRS) Full Text | | You can suggest an article for inclusion here. |

Status:

☑ Introduced     Oct 30, 2007
☑ Passed House [details]    May 13, 2008
☑ Passed Senate     May 20, 2008
☐ Signed by President    -

Having passed in identical form in both the House and Senate, this bill now awaits the signature of the President before becoming law. [Last Updated: May 28, 2008]

Last Action:    May 23, 2008: Presented to President. Show All Related Votes

## Votes on Passage

May 13, 2008: This bill **passed** in the **House of Representatives** by roll call vote. The vote was held under a suspension of the rules to cut debate short and pass the bill, needing a two-thirds majority. The totals were 407 Ayes, 0 Nays, 26 Present/Not Voting.



View Votes (House of Representatives roll no. 308)

You are not watching the votes of any senators or representatives. To monitor votes, look up a Member of Congress.

May 20, 2008: This bill **passed** in the **Senate** by Unanimous Consent. A record of each representative's position was not kept.

EXHIBIT

C

Case 1:08-cv-02151    Document 18-4    Filed 06/02/2008    Page 2 of 2

## All Roll Call Votes

| Date | Where | Description | Result |
|------|-------|-------------|--------|
| May 13, 2008 7:23 PM | House | Final Vote (House) | Passed 407-0, 26 not voting (2/3 required) |

## Related Legislation

## See Also

Below are related bills identified by Library of Congress staff:

S. 2978: A bill to amend the Fair Credit Reporting Act to...    *Introduced*

## Subject Terms

This bill is related to other bills in these subject areas:

Consumer protection
Consumers
Credit cards
Crime prevention
Criminal justice
Debit cards
Finance

To cite this information, we recommend the following:

GovTrack.us. H.R. 4008--110th Congress (2007): Credit and Debit Card Receipt Clarification Act of 2007, *GovTrack.us (database of federal legislation)* <http://www.govtrack.us/congress/bill.xpd?bill=h110-4008&page-command=print> (accessed May 29, 2008)

Because the government takes a day or two to post legislative information online, GovTrack is usually one legislative day behind.